IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

D'ANGELO T. HOWARD,                    )
                                       )
            Plaintiff,                 )
                                       )
                                       )        CIV-09-614-L
v.                                     )
                                       )
MICHAEL J. ASTRUE,                     )
  Commissioner of Social Security      )
   Administration,                     )
                                       )
            Defendant.                 )


## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his concurrent applications for disability insurance and

supplemental security income benefits under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues. The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that

the Commissioner's decision be reversed and remanded for further administrative

proceedings consistent with the following findings.

I. <u>Background</u>

Plaintiff filed his applications on June 2, 2006, alleging that he became disabled on March 18, 2003, due to social anxiety, bipolar, and depression impairments. (TR 106-110, 111-113, 128). Plaintiff later amended the alleged date of onset to May 31, 2005. (TR 18, 51). In his function report completed with his applications, Plaintiff stated he lived with his mother, slept four hours per night, helped with home maintenance chores, did not like to be around too many people, watched television, had no social activities, and had trouble talking, hearing, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with authority figures or other people. (TR 135-141). He stated that "people think [he's] strange" and that medications were not helpful. (TR 141-142). With his administrative appeal, Plaintiff stated he was increasingly more depressed and disturbed by other people and was experiencing more sleeping problems, stomach problems, dizziness, and rapid heart rates. (TR 155-158).

Plaintiff's applications were denied initially and on reconsideration. (TR 44-47). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge McLean ("ALJ") on June 30, 2008. (TR 8-43). At this hearing, Plaintiff and a vocational expert ("VE") testified. Plaintiff testified that he was 29 years old, had obtained a general equivalency degree, and had previously worked as a furniture mover, clothing presser, and baker's helper. Plaintiff also testified that he had not worked since May 2005 and that he lived with his mother and then his father beginning in 2003. Plaintiff stated he took antidepressant and antipsychotic medications prescribed by his treating mental health

professionals at the Jim Taliaferro Community Mental Health Center ("Taliaferro"). Plaintiff described previous abuse of alcohol and two alcohol-related convictions but testified he had not used alcohol for two months preceding the hearing. Plaintiff further described adverse side effects of his medications, difficulties with sleeping, focus, and concentration, and feeling overwhelmed when he was around other people.

On August 29, 2008, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 51-61). Plaintiff requested administrative review of this decision, but the Appeals Council declined the request. (TR 1-4). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

Under the generalized argument that "[t]he ALJ failed to properly evaluate the medical evidence," Plaintiff contends the ALJ erred by substituting her own opinion, erred in evaluating the opinion of Plaintiff's case manager at Taliaferro, and erred by failing to follow the correct legal standards in analyzing the effect of his drug and alcohol abuse upon his ability to work. The Commissioner responds that the ALJ properly evaluated the evidence and that the Commissioner's decision should be affirmed.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hamilton v. Secretary of Health & Human Servs.</u>, 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2009); <u>see also</u> <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that

the claimant retains sufficient residual functional capacity . . . to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10ᵗʰ Cir. 1984).

III. ALJ's Decision

Following the requisite sequential analysis, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2007, and that he had not engaged in substantial gainful activity since May 31, 2005, his alleged disability onset date. (TR 53). At the second step, the ALJ found that Plaintiff had severe impairments due to bipolar disorder and depressive disorder with anxiety. (TR 53). Considering the agency's Listing of Impairments, the ALJ found at step three that Plaintiff's severe impairments were not disabling *per se* under the pertinent Listings 12.04 and 12.06. (TR 53-55).

At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with the following nonexertional limitations: "the claimant can perform simple, repetitive tasks; he cannot perform customer service activities, but [he] can have occasional contact with the public." (TR 55-60). Considering this RFC for work and relying on the VE's testimony at the administrative hearing, the ALJ found that Plaintiff could perform his previous jobs as a furniture mover and garment presser. (TR 60). Alternatively, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform, including the jobs of truck loader, hand packer, and laundry separator. (TR 60-61). In light of these findings, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act. (TR 61).

IV. Medical Record

The record shows that Plaintiff has received mental health treatment at Taliaferro beginning in 1998 and continuing off and on through February 2008. He was diagnosed with an anxiety disorder in April 1998, and the evaluating clinician at Taliaferro indicated a possible diagnosis of paranoid personality disorder. (TR 366). Plaintiff failed to comply with the recommended therapy program and was later discharged. (TR 364). Plaintiff joined the military but again sought treatment at Taliaferro in February 2002 for extreme anxiety. (TR 362). Plaintiff stated that he was absent without leave from his military station and unemployed. (TR 354, 362). The treating clinician noted that Plaintiff showed increased depression due to anxiety. (TR 358). There are no notes of treatment at this time.

In June 2003, Plaintiff was admitted to Taliaferro for inpatient mental health treatment under an Emergency Order of Detention. (TR 318). Treating notes from Taliaferro indicate local police had brought Plaintiff to the facility after police were notified by telephone that Plaintiff had a gun and had threatened to shoot himself. (TR 318). During his admission interview, Plaintiff stated he was unable to find employment following his discharge from the military and he was paranoid around other people. (TR 318). Plaintiff was diagnosed by Dr. Herd, his treating psychiatrist at Taliaferro, with an adjustment disorder with depressed mood and cannabis abuse. (TR 320). Dr. Herd noted a global assessment of functioning

("GAF") score[1] for Plaintiff of 30 upon Plaintiff's admission. (TR 320). Plaintiff was discharged from Taliaferro seventeen days later. (TR 302). The diagnosis upon his discharge was unchanged. (TR 302).

In September 2003, Plaintiff was evaluated at Taliaferro. (TR 360). In a mental status examination, the treating psychiatrist, Dr. Boyer, noted Plaintiff was oriented, tearful, anxious, and gave a history of social phobia, inability to sleep, and periods of increased activity with racing thoughts. (TR 360). Dr. Boyer diagnosed Plaintiff with major depression without psychotic features, social phobia, and possible bipolar disorder. (TR 360). Antidepressant and anxiolytic medications were prescribed for Plaintiff. (TR 208, 360). In a psychosocial assessment completed on September 3, 2003, the clinician noted that Plaintiff complained of experiencing paranoia around other people. (TR 193). Plaintiff exhibited a depressed mood, anxiety, and difficulty with concentration. (TR 197). In September 2003, Plaintiff's medications were adjusted. He was prescribed lithium, his dosage of the previously-prescribed anxiolytic medication was increased, and the antidepressant medication was continued. (TR 208).

In December 2003, Plaintiff was admitted to Taliaferro for inpatient mental health

_____

[1]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32).

treatment under an Emergency Order of Detention. (TR 282). The treating psychiatrist, Dr. Herd, reported in a discharge summary that Plaintiff was admitted on December 21, 2003, from the city jail. Plaintiff stated he had become paranoid that other people were talking about him, he did not like being around other people in the jail, and he "flipped out." (TR 282). In a mental status examination, Dr. Herd noted Plaintiff was oriented, cooperative, marginally groomed, and exhibited depressed affect but intact memory, judgment, and concentration. (TR 282). Dr. Herd's diagnosis was social anxiety disorder and possible paranoid schizophrenia, and GAF scores of 35 on admission and 35 on discharge were assessed. (TR 284, 287). Plaintiff was prescribed antipsychotic medication and blood pressure medication. (TR 284). According to Dr. Herd, Plaintiff became more interactive with staff during his eight-day hospitalization, and on the date of his discharge Plaintiff was communicating with less thought projection and denied suicidal feelings. (TR 284).

Dr. Boyer continued psychotropic medications for Plaintiff in August 2004, October 2004, and March 2005, and he prescribed a sleeping aid medication for Plaintiff beginning in October 2004. (TR 207). In March 2005, Dr. Boyer noted Plaintiff was not taking his medications. Plaintiff reported he was drinking heavily until about six months previously. (TR 203). Dr. Boyer diagnosed Plaintiff with bipolar II disorder. (TR 203). On April 20, 2005, Plaintiff reported to a Taliaferro clinician that he was being evicted from his government-supported housing, was unemployed, and was not taking his medications. (TR 202). In August 2005, Plaintiff was discharged from Taliaferro for noncompliance. (TR 201).

In October 2005, Plaintiff sought treatment again at Taliaferro and underwent a psychiatric evaluation conducted by Dr. Raffi. Plaintiff reported that he had stopped taking his medications four months previously because he was doing well but that he had begun experiencing depression symptoms, his wife left him, and he lost his job. (TR 188). Dr. Raffi noted Plaintiff had been noncompliant with his medications. (TR 257). Plaintiff admitted to abusing methamphetamine and marijuana. (TR 188). Dr. Raffi noted Plaintiff exhibited depressed mood, restricted affect, fair concentration, judgment, and insight, and intact memory and attention. (TR 188). Dr. Raffi's diagnosis was bipolar II disorder, currently depressed without psychotic features and polysubstance dependence in partial remission, for which lithium, antidepressant, and sleeping aid medications were prescribed. (TR 189).

In November 2005, Plaintiff's treating clinician at Taliaferro noted a diagnosis of bipolar disorder with history of cannabis abuse. (TR 201). Psychotropic and sleeping aid medications were prescribed for Plaintiff at Taliaferro in December 2005, February 2006, and April 2006. (TR 205-206). In January 2006, Plaintiff "denie[d] any mental health issues" since beginning his medications. (TR 200). On February 24, 2006, a psychiatrist at Taliaferro examined Plaintiff and noted that he was alert, awake, oriented, exhibited appropriate affect and thought processes, and fair insight and judgment. Plaintiff denied suicidal ideation or psychotic symptoms. (TR 200). The examining psychiatrist noted Plaintiff's bipolar and anxiety disorders were "stable" on medications. (TR 200).

The previous diagnosis and Plaintiff's psychotropic medications were continued in April 2006, as reported in a treatment plan prepared by Plaintiff's treating Taliaferro staff,

including staff psychiatrists, Dr. Azeem and Dr. Raffi. (TR 186). Plaintiff reported to his treating clinician in May 2006 that he had lost another job and was facing eviction but was seeking new employment. (TR 199).

Plaintiff's treating mental health clinicians at Taliaferro noted in October 2006 that Plaintiff had completed an application for vocational rehabilitation training after he had lost another job a month before. (TR 392). Plaintiff reported he had been evicted in November 2006 and he was referred to a job counselor and referred for assistance obtaining low-income housing. (TR 391. Plaintiff was again referred for vocational rehabilitation training in January 2007 when he requested part-time work to supplant his income. (TR 390). In February 2007, Plaintiff was assisted at Taliaferro in obtaining food stamps. (TR 390).

In a psychiatric evaluation conducted at Taliaferro in February 2007, Plaintiff reported he was not taking his prescribed medications and had missed appointments at the clinic. Plaintiff stated he was very anxious around other people and imagined they were talking about him. (TR 389). In a mental status examination, the treating psychiatrist (whose name is illegible) noted Plaintiff exhibited depressed mood and affect and paranoid delusions. He was diagnosed with bipolar II disorder, currently depressed, with psychotic features, and the psychiatrist prescribed psychotropic medications, including lithium, for Plaintiff. (TR 388-389).

In April 2007, Plaintiff reported feeling anxious and stated he had lost his job due to anxiety and was living with his mother. (TR 387). The examining psychiatrist noted Plaintiff exhibited mild paranoid ideation and Plaintiff's diagnosis was unchanged. (TR 387). His

medications were increased. (TR 387).  In May 2007, the examining psychiatrist noted Plaintiff's affect was restricted but Plaintiff reported the prescribed antidepressant medication was helping his depression. (TR 386).  The diagnosis was unchanged, and the psychotropic medications were continued with an increase in one medication. (TR 386).  In June 2007, a treating mental health clinician noted Plaintiff appeared "sad and depressed" and he was referred for counseling. (TR 384).  In July 2007, Plaintiff reported he was being evicted, and he reported in September 2007 that he had "legal problems" involving fines and fees. (TR 384).  In October 2007, a treating clinician noted Plaintiff was having suicidal ideations, that he had not been taking his medications, and that he described adverse medication side effects, an inability to hold a job, decreased interest in activities, depressed mood, and decreased energy. (TR 383-384).   In February 2008, Plaintiff admitted to a treating psychiatrist at Taliaferro that he had not been taking his prescribed medications since  his inpatient treatment in October 2007, that his mood was depressed, and that he was experiencing paranoid delusions. (TR 399).  The diagnosis was bipolar II disorder, currently depressed, with psychotic features. (TR 399).   Plaintiff was restarted on multiple antidepressant and antipsychotic medications and encouraged to be compliant with his medications. (TR 399).  The last treatment note in the record dated February 15, 2008, indicates Plaintiff requested financial assistance in order to receive his prescribed medications. (TR 399).   The record also contains a letter dated March 12, 2008, authored by a staff member at Taliaferro addressed to the Salvation Army asking for assistance in obtaining housing for Plaintiff as he was homeless. (TR 180).

Plaintiff underwent a consultative psychological examination conducted by Dr. Morris in August 2006. Dr. Morris conducted psychological testing of Plaintiff and reported that Plaintiff appeared agitated during the examination and exhibited severe credibility problems. (TR 217). According to Dr. Morris, Plaintiff was "intentionally vague and evasive regarding his education, criminal record, military history, school history, and adaptive functioning, and even regarding his name" as he could not explain why an identification card he produced during the examination bore a different last name. (TR 217-218). Dr. Morris's diagnostic impression was Malingering, Schizophrenia, paranoid type, chronic, and Alcohol Dependence in sustained full remission. (TR 221). In conclusion, Dr. Morris opined that Plaintiff's "ability to do work-related mental activities, such as his ability to understand, remember, and sustain concentration, persist, socially interact, and adapt, appears to be adequate for many types of employment." (TR 221).

A medical consultant for the agency completed a Mental RFC Assessment indicating that Plaintiff's functional abilities were markedly limited by his mental impairments with respect to his abilities to understand, remember, and carry out detailed instructions and his ability to interact appropriately with the general public. (TR 226-227). The consultant also stated that despite Plaintiff's mental impairments he could (1) perform simple tasks with routine supervision, (2) relate to supervisors and peers on a superficial work basis, and (3) adapt to a work situation, but he could not relate to the general public. (TR 228). Another medical consultant for the agency completed a Psychiatric Review Technique analysis in which the consultant indicated that Plaintiff's affective and anxiety-related disorders had

resulted in mild restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation or deterioration in work or work-like settings. (TR 229-239).

V. Substitution of Lay Opinion for Medical Opinion

Plaintiff first contends that the ALJ erred by speculating that when Plaintiff is compliant with his medications and is not abusing drugs or alcohol his mental impairments are stable. The record contains evidence that Plaintiff has significant drug and alcohol abuse problems and that he has periods of noncompliance with prescribed treatment and his prescription medications, often seeking treatment again only after his depression, anxiety, and paranoia symptoms have worsened and he has suffered job, relationship, and/or functional difficulties.[2]

At step four, the ALJ must determine whether the claimant retains the RFC to perform the requirements of his or her past relevant work. The claimant bears the burden at step four of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return

---

[2]The National Institutes of Mental Health has stated that "[s]ubstance abuse is very common among people with bipolar disorder, but the reasons for this link are unclear." http://www.nimh.nih.gov/health/publications/bipolar-disorder/complete-index.shtml#pub5. Additionally, "[n]oncompliance with medication is a very common feature among bipolar patients. Rates of poor compliance may reach 64 % for bipolar disorders, and noncompliance is the most frequent cause of recurrence." http://www.ncbi.nlm.nih.gov/pubmet/10982196

to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

In this case, the ALJ extensively summarized the medical and nonmedical evidence in connection with the RFC and credibility findings made at step four. The ALJ first summarized Plaintiff's testimony at the hearing and set forth inconsistencies between Plaintiff's testimony and the records of his treatment at Taliaferro. The ALJ next summarized Plaintiff's treatment records and concluded that "[w]hen [Plaintiff] is compliant with his medications and refrains from drug and alcohol abuse, his condition is stable. Conversely, when [Plaintiff] goes off his medications and abuses drugs and alcohol, he decompensates." (TR 56). The ALJ pointed to the Plaintiff's treatment record to support this conclusion. (TR 56-57). Finally, the ALJ summarized the report of the consultative psychological examiner, Dr. Morris, and the psychiatric review technique and mental RFC assessments completed by medical consultants for the agency. (TR 57-59).

Plaintiff contends the ALJ substituted her own "speculative analysis" for other

evidence in the record. Plaintiff's Brief, at 8. Plaintiff's reliance on two Tenth Circuit Court of Appeals' decisions, <u>Robinson v. Barnhart</u>, 366 F.3d 1078 (10th Cir. 2004), and <u>McGoffin v. Barnhart</u>, 288 F.3d 1248 (10th Cir. 2002), in support of this argument is misplaced. These cases involved an ALJ's substitution of his or her own opinion for that of a claimant's treating physician. In <u>McGoffin</u>, the Tenth Circuit firmly held that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" <u>McGoffin</u>, 288 F.3d at 1252 (emphasis in original)(internal quotation and citation omitted). In <u>Robinson</u>, the ALJ's decision was reversed, in part, because the ALJ had interposed his own speculative lay opinion that the claimant refused to comply with prescribed treatment as a basis for rejecting the claimant's treating physician's opinion. <u>Robinson</u>, 366 F.3d at 1083.

Plaintiff's argument is directed to the ALJ's RFC and credibility findings, and not to any medical judgment about a treating physician's opinion. In her decision, the ALJ provided an explanation for her RFC and credibility findings. In connection with the step four findings, the ALJ stated that the record showed Plaintiff's mental impairments were stable, apparently meaning that his mental functioning allowed him to work, when he complied with prescribed medications and did not abuse drugs or alcohol. This statement is supported by the record with respect to the Plaintiff's compliance with prescribed treatment. The record shows that when Plaintiff complied with treatment prescribed for his mental

impairments, his treating psychiatrists found his impairments stabilized. As referenced by the ALJ in her decision, when Plaintiff was briefly hospitalized at Taliaferro in December 2003, the treating psychiatrist, Dr. Herd, noted that after eight days of treatment with medications Plaintiff became more interactive with staff and "was able to communicate with less thought projection" that other people were talking negatively about him. (TR 210). Additional records of Plaintiff's subsequent treatment at Taliaferro also afford support for the ALJ's conclusion. The record shows that in 2005, 2006, and 2007 Plaintiff repeatedly stopped complying with prescribed treatment and sought to re-establish treatment at Taliaferro only when his depressive and anxiety symptoms and his resulting functional difficulties increased. On one occasion, a treating psychiatrist at Taliaferro noted that Plaintiff was "stable" on medications in February 2006. (TR 200). In the most recent treatment note appearing in the record, the psychiatrist at Taliaferro noted in February 2008 that Plaintiff admitted he had not been taking his prescribed medications since his previous inpatient treatment in October 2007, that his mood was depressed, and that he was experiencing paranoid delusions. (TR 399). The diagnosis was bipolar II disorder, currently depressed, with psychotic features. (TR 399). Plaintiff was restarted on multiple antidepressant and antipsychotic medications and encouraged to be compliant with his medications. (TR 399).

However, there is nothing in the record to support the ALJ's finding that when Plaintiff stopped abusing illegal drugs or alcohol that his mental impairments were "stable." The Social Security Act was amended in 1996 to add an additional step to the requisite

sequential evaluation for claimants with impairments due to drug and alcohol abuse. Under this provision, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Commissioner's implementing regulations advise disability claimants that "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§404.1535(a), 416.935(a).

The ALJ in this case did not follow the required analytical process required upon her finding that Plaintiff's illegal drug and alcohol abuse contributed to an inability to work and that Plaintiff's abstention from illegal drug and alcohol abuse would allow him to work. In Salazar v. Barnhart, 468 F.3d 615 (10th Cir. 2006), the Tenth Circuit Court of Appeals discussed the treatment of illegal drug and alcohol abuse by ALJ's and concluded that the "anecdotal comments" by one treating physician and a "single statement" from another treating physician could not provide substantial evidence that the claimant's remaining mental limitations would not be disabling in the absence of her illegal drug and alcohol abuse. Id. at 624-625. In this case, the ALJ apparently focused on a single recommendation by a treating psychiatrist noted in September 2003 that Plaintiff stop using cannabis. (TR 56). Because there is not substantial evidence in the record to support the ALJ's finding with regard to the effects of Plaintiff's illegal drug and alcohol abuse, the case must be remanded

17

for further administrative proceedings.

VI. Treatment of Non-physician's Opinion

A case manager at Taliaferro (who is also a licensed drug and alcohol counselor, according to the ALJ) completed a mental impairment questionnaire dated June 2, 2008. (TR 401-404). The case manager, Mr. Hawkins, stated that Plaintiff had been diagnosed with major depressive disorder, recurrent, and mood disorder, that his GAF score was 30 and his highest GAF score in the previous year was 50, and that Plaintiff's symptoms included personality change, mood disturbance, difficulty thinking or concentrating, illogical thinking or loosening of association, decreased energy, hostility, irritability, and evidence of slight cognitive impairment. (TR 401). Mr. Hawkins stated Plaintiff was not a malingerer, that his prescribed medications were Zoloft[3] and Risperdal[4], and that these medications caused side effects of lethargy and "tunnel" thoughts. (TR 401-402).

In Mr. Hawkins' opinion, Plaintiff's mental impairments would cause him to be absent from work more than three times a month and he would have difficulty working at a regular job on a sustained basis because of impaired focus and concentration. (TR 402-403). In Mr. Hawkins' opinion, Plaintiff's mental impairments further caused his activities of daily living to be moderately limited, caused Plaintiff slight difficulties in maintaining social functioning, resulted in Plaintiff often experiencing difficulties with concentration, persistence, and pace,

---

[3]Zoloft is approved for the treatment of depression, certain types of social anxiety conditions, and other mental health conditions. http://www.zoloft.com

[4]Risperdal is approved for treatment of schizophrenia and bipolar disorder. http://www.risperdal.com

and resulted in repeated episodes of deterioration or decompensation in work or work-like settings, with all of these functional limitations beginning in March 2003 and existing on or before March 31, 2007. (TR 403-404).

Social security regulations distinguish between the opinions of "acceptable" medical sources and other sources of evidence submitted by a disability claimant. Pursuant to 20 C.F.R. § 404.1513(a)(1), physicians are "acceptable medical sources" who can establish whether a claimant has a medically determinable impairment. Only "acceptable medical sources" can give medical opinions and be considered treating sources whose medical opinions may be entitled to controlling weight. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007). Evidence from other sources, such as therapists, may be used to show the severity of a claimant's impairment(s) and how the impairment(s) affect the claimant's ability to work. 20 C.F.R. § 404.1513(d), Frantz, 509 F.3d at 1301. SSR 06-03p provides that "[o]pinions from these [other] medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. at *3. The factors established for weighing the opinions of acceptable medical sources are set out in 20 C.F.R. § 404.1527(d) and 416.927(d), and these factors also apply to "all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other [non-medical] sources.'" Id. at *4. Thus,

> depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may

outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

Id. at *5. Under SSR 06-03p, ALJs are directed to

explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Id. at *6.

In this case, the ALJ concluded that Mr. Hawkins' opinion was not entitled to controlling weight although the ALJ gave it "some weight," and the ALJ pointed to inconsistencies between the opinion and Plaintiff's treatment records at Taliaferro as reason for partially discounting the opinion. (TR 59). Plaintiff contends that the ALJ did not properly analyze Mr. Hawkins' opinion.

As support for the ALJ's finding as to the weight accorded Mr. Hawkins' opinion, the ALJ noted Mr. Hawkins' status as a case manager rather than a treating mental health professional. The ALJ also noted that Mr. Hawkins' estimates of GAF scores assessed for Plaintiff were "not consistent with the review of the clinic treatment notes reflecting the GAF was documented as low as 40 during a crisis episode, but as high as 65 otherwise." (TR 59). The record contains evidence that Plaintiff's treating mental health psychiatrists at Taliaferro have assessed GAF scores for Plaintiff as low as 30 in June 2003 (TR 320) and 35 in

20

December 2003 (TR 284). There are other GAF scores in the record ranging from 52 to 65 during 2005, indicating only "moderate" symptoms.[5] (TR 248, 257, 270). Plaintiff's treatment records at Taliaferro do not reflect GAF scores were assessed for Plaintiff during 2006, 2007, or 2008, although there are treatment records from Taliaferro through February 2008. Nevertheless, the ALJ misread the evidence by stating that, as a reason for discounting Mr. Hawkins' opinion, Plaintiff had not been assessed with a GAF score below 40.

The ALJ also pointed to inconsistencies between Plaintiff's treatment records at Taliaferro and Mr. Hawkins' assessment of Plaintiff's functional limitations resulting from his mental impairments. The ALJ reasoned that Mr. Hawkins' assessment that Plaintiff experienced repeated episodes of deterioration or decompensation in work or work-like settings was not consistent with Plaintiff's treatment records at Taliaferro. The ALJ did not provide any page or exhibit references to the record. Plaintiff's treatment records at Taliaferro reflect that Plaintiff complained of losing multiple jobs and that Plaintiff experienced difficulties with work-like activities such as making appointments, paying utility bills, obtaining food stamps, and accessing community resources. The ALJ's reasons for discounting Mr. Hawkins' opinion with regard to the Plaintiff's functional limitation for episodes of deterioration or decompensation in work or work-like settings are not supported by the record.

---

[5]A GAF score of 51 to 60 "indicates 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.'" Roybal v. Astrue, No. 06-4189, 2007 WL 1475276, at *1 (10th Cir. 2007)(unpublished op.)(quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (2000)).

VII. <u>Treatment of Medical Consultants' Opinions</u>

In the ALJ's decision, the ALJ stated that she was giving "great weight and consideration [to the opinions of the agency's medical consultants] as consistent with the medical records and evidence overall." (TR 58-59). Plaintiff argues that the ALJ's statement is not an adequate explanation for giving the medical consultants' opinions "great weight." Plaintiff's argument is well taken. The ALJ's decision does not point to evidence in the record that is consistent with the medical consultants' opinions. On remand, administrative proceedings should address this deficiency.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner and REMANDING the case for further administrative proceedings. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before March 29th      , 2010, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ___9th___ day of ___March___, 2010.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE